E-FILED
Monday, 10 August, 2026 04:24:21 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 25-cr-30037 |
| | ) | |
| JOSE LEMUS-ANGUIANO | ) | |
| Defendant. | ) | |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Defendant Jose Lemus-Anguiano's Amended Motion to Suppress Evidence obtained from the search of the vehicle he was driving on September 12, 2024. (Doc. 33). The Court has considered the evidence presented during the evidentiary hearing along with the parties' briefs.

## I.    BACKGROUND

On September 12, 2024, Illinois State Trooper Heaton pulled over Defendant and a passenger for driving over the fog line multiple times in a black Cadillac SUV. After Trooper Heaton approached the Cadillac, he realized the occupants spoke Spanish and knew very little English. Defendant gave Trooper Heaton his identification and Trooper Heaton asked him to come to his car. Once in the squad car, Trooper Heaton called for backup, filled out paperwork pertaining to the stop, and utilized a Spanish translation application to ask Defendant about his travel plans. He also asked simple questions using the limited Spanish he knew that Defendant appeared to understand and answer. The

application provided both a written and spoken Spanish translation of Trooper Heaton's questions to Defendant. In response to several questions, Defendant told Trooper Heaton he had been working in Oklahoma for the past week and his friend, the passenger, had picked him up to take him to Chicago, where Defendant lived. As he was entering information into his computer, Trooper Heaton learned neither Defendant nor passenger owned the Cadillac, and the owner, the passenger's cousin, had multiple other cars registered under his name.

Sergeant Ent arrived as backup approximately ten minutes after Defendant entered Trooper Heaton's car. Upon arrival, Trooper Heaton asked Sergeant Ent to retrieve insurance information from the vehicle. Sergeant Ent obtained the vehicle's insurance and questioned the passenger about his travel plans using a few Spanish phrases and a Spanish translation app. The passenger's description of his travel plans was consistent with Defendant's account. Sergeant Ent returned to Trooper Heaton's squad car and spoke to him in English while partially leaning through the passenger-side window next to Defendant. Both officers noted the passenger looked nervous and Trooper Heaton expressed doubts about Defendant's travel plans and how he traveled to Oklahoma in the first place. Sergeant Ent then took several steps away from the window after they finished speaking.

After Trooper Heaton gave Defendant his documents back and issued him a warning, he asked Defendant if he could ask him more questions. Defendant agreed to additional questioning during which time he denied having different types of illegal

contraband and firearms in the vehicle. After Sergeant Ent retrieved gloves from his squad car, he stood a few feet away from the passenger-side door of Trooper Heaton's car. Finally, Trooper Heaton, using the translation application, asks whether he can search Defendant's vehicle "from top to bottom." After the application provided a written translation of the question but before the verbal translation was complete, Defendant, according to Trooper Heaton, nodded his head "yes." The body camera was pointed away from Defendant at this point so video evidence cannot corroborate Trooper Heaton's statement. In response to the affirmative nod, Trooper Heaton stated "uno momento" and Defendant responded "sí." The search of Defendant's vehicle revealed several firearms and magazines. The entire stop lasted approximately seventeen minutes with only 90 seconds passing between Trooper Heaton issuing the warning and Defendant allegedly consenting to a search of the vehicles.

Defendant filed a Motion to Suppress evidence of the search and then filed an amended motion superseding the first motion. (Doc. 33). Defendant argues that (1) the traffic stop was prolonged without a reasonable suspicion and (2) even if it wasn't, Defendant did not voluntarily consent to the search of the Cadillac.

## II.    DISCUSSION

### A. Defendant's Stop was Prolonged but Justified by Reasonable Suspicion

"[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350 (2015). A seizure justified only by a traffic violation

"become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission of issuing a ticket for the violation." *Id.* at 350–51 (internal quotation marks omitted). A stop can be prolonged, however, if an officer has developed a "reasonable suspicion that criminal activity is afoot." *Matz v. Klotka*, 769 F.3d 517, 522 (7th Cir. 2014). Reasonable suspicion requires more than a "hunch" but "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Cole*, 21 F.4th 421, 433 (7th Cir. 2021) (internal quotation marks omitted).

Defendant correctly contends the purpose of the stop—to address him driving over the fog line—had been fulfilled once he was issued a warning. Defendant's argument hinges on the 90 seconds that he was arguably unable to get out of Trooper Heaton's car because he claims Sergeant Ent was blocking the door. "Whether a lawful stop extends so long that it raises constitutional concerns turns on reasonableness." *United States v. Gholston*, 1 F.4th 492, 496 (7th Cir. 2021). While the 17-minute length of detention in this case is not excessive, the real question to ask is "whether the defendant was detained longer than necessary for the underlying investigation, not exactly how many minutes the stop lasts." *Id.* (internal quotation marks omitted).

Defendant's traffic violation was addressed once Defendant received a warning. Generally, once an officer finishes the ticketing process, a driver is no longer detained so anything said after that point is voluntary. *See U.S. v. Chan* 136 F.3d 1158, 1160 (7th Cir. 1998) ("[A] reasonable person would not have believed that he was being detained

following the conclusion of the traffic stop." (internal quotation marks omitted)); *see also Ohio v. Robinette*, 519 U.S. 33, 35 (1996) (finding a defendant need not be advised he is "free to go" before his consent to search will be recognized as voluntary). Here, Defendant was given his warning as he was sitting in a squad car, and Trooper Heaton admits he never told him he was free to leave or that the traffic stop had concluded. *See United States v. Smith*, 794 F.3d 681, 686 (7th Cir. 2015) ("[O]fficers need not totally restrict a citizen's freedom of movement in order to convey the message that walking away is not an option."). Therefore, the Court finds Defendant's stop was prolonged beyond the point where its initial purpose had been satisfied.

However, considering the totality of the circumstances, Trooper Heaton and Sergeant Ent had reasonable suspicion to prolong Defendant's traffic stop. The Government gives four reasons justifying reasonable suspicion: the (1) nervousness of Defendant and the passenger; (2) suspicious answers to questions; (3) vehicle ownership; and (4) the location of the stop. Taken together, these reasons merit a "reasonable suspicion that criminal activity is afoot." *Matz* 769 F.3d at 522. The Court takes each of the Government's reasons in turn.

The Seventh Circuit has said that "nervousness is certainly a factor that can support reasonable suspicion." *United States v. Rodriguez-Escalera*, 884 F.3d 661, 669 (7th Cir. 2018) (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)) (finding defendants did not appear that nervous). Sweating or heavy breathing has been cited as evidence of nervousness. *Cole*, 21 F.4th at 434. Both officers commented in the video and credibly

testified that the passenger looked nervous during the stop. Sergeant Ent testified that passenger's hands were shaking when he asked him for vehicle insurance and Trooper Heaton noticed heavy breathing. Body camera footage from the stop partially corroborates the officers' statements and demonstrates the passenger's reluctance to make eye contact. Even recognizing the ordinary anxiety associated with a traffic stop, Trooper Heaton credibly testified that Defendant and the passenger were more nervous than the average stopped motorist, including those who don't speak English well.

Inconsistent or implausible answers can also support a reasonable suspicion. *United States v. Lewis*, 920 F.3d 483, 493 (7th Cir. 2019) (finding reasonable suspicion based in part on defendant's "suspiciously inconsistent" answers). Law enforcement officers can reasonably suspect a defendant's answer to questions to be false if their story "is not inconceivable" but nonetheless "implausible." *Cole*, 21 F.4th at 434 (quoting *United States v. Walton*, 827 F.3d 682, 688-89 (7th Cir. 2016)). Here, Trooper Heaton reasonably questioned Defendant's account that he had traveled approximately 800 miles to Oklahoma to work for one week and that the passenger traveled over 1000 miles round-trip to retrieve him. *See e.g., Cole*, 21 F.4that 434 ("Even if this story was not inconceivable, [the officer] reasonably suspected that it was false.").

Driving a car owned by someone else may also raise reasonable suspicion. Trooper Heaton testified that it is common for people transporting illegal contraband to drive cars they don't own, thus fueling his reasonable suspicion. *See Maltby v. Winston*, 36 F.3d 548, 557 (7th Cir. 1994) (explaining that "those participating in drug transactions often

use cars belonging to other people"). During the stop, Trooper Heaton alerted Sergeant Ent that the car Defendant was driving was owned by someone else with multiple other cars in his name, indicating he believed something was amiss.

Finally, the Government argues the fact that Defendant was driving on a major smuggling corridor supports the Officers' reasonable suspicion. The Court is the least persuaded by this argument. The Supreme Court has found that one's presence in an area of expected criminal activity is not enough by itself to establish a reasonable suspicion. *Brown v. Texas*, 443 U.S. 47, 52 (1979). Taken alone, the fact Defendant was pulled over driving on Interstate 55 is largely inconsequential, but when paired with the other factors it slightly supports the Government's assertion that the officers had developed reasonable suspicion. While this is a close issue, upon considering the totality of the circumstances and the officers' credible testimony, the Court finds there was reasonable suspicion to extend Defendant's stop.

### B.  Consent to Search

An officer needs neither probable cause nor a warrant to search a car if the defendant voluntarily consents to a search. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). To determine whether consent is voluntary and therefore valid, the Seventh Circuit considers: "(1) the age, education and intelligence of the defendant; (2) whether [the defendant] was advised of his constitutional rights; (3) the length of detention prior to consent; (4) whether [the defendant] consented immediately or police made repeated requests for consent; (5) whether physical coercion was used; (6) whether [the defendant]

was in custody." *United States v. Strache*, 202 F.3d 980, 985 (7th Cir. 2000). Determining voluntariness "does not rest on 'the presence or absence of a single controlling criterion,' but instead requires 'careful scrutiny of all the surrounding circumstances.'" *Id.* (quoting *Schneckloth* 412 U.S. at 226).

At the evidentiary hearing, Defendant did not substantially argue he had not given consent to Trooper Heaton's request to search his vehicle. Rather, he contends the consent provided was not given voluntarily. Defendant asserts that law enforcement was determined to search his car regardless of what he said because when he was in Trooper Heaton's squad car being questioned about the Cadillac's contents, Sergeant Ent, bearing search gloves, was barring his exit. Upon review of the body camera footage, the Court finds the short time-period between the conclusion of the traffic stop and Defendant's consent to the search was not coupled with any physical act or psychological pressure or intimidation by the officers in question. Defendant laughed during the questioning and Sergeant Ent was at least a couple feet away from the passenger door when consent was given. Therefore, the Court concludes that Defendant understood Trooper Heaton's request to search the vehicle and consented to the search.[1]

---

[1] Defendant also did not object or look confused after the search of his car began, further indicating he had consented to the search. *See Gerald M. v. Conneely*, 858 F.2d 378, 385 (7th Cir. 1988) (holding a law enforcement officer could assume consent to enter a home where the resident did not "verbally object," "act astonished," or "physically respond in any way that might relay the message she disapproved" of the officer's movement); *see also United States v. Leiva*, 821 F.3d 808 (7th Cir. 2016) (finding a Spanish-speaking defendant who quickly answered an officer's question in the affirmative without confusion consented to a search of his vehicle despite the officer, in Spanish, requesting to search *for* the defendant's car).

Applying the factors in *Strache*, the Court finds Defendant's consent was voluntary. Defendant, by all accounts, is a reasonably intelligent adult. He had been detained for only approximately 17 minutes prior to providing consent. *See United States v. Santiago*, 428 F.3d 699, 702 (7th Cir. 2005) (upholding a district court's finding of voluntary consent that was obtained "within a short '15 or 20-minute time frame' and without any physical or psychological pressure."). Defendant consented to a search of the vehicle immediately after Trooper Heaton asked him. Physical coercion was not used to elicit Defendant's consent — neither officer was abrasive or aggressive with Defendant. Sergeant Ent was standing outside the passenger-side door with his search gloves, but it does not appear from the body cam footage that Defendant knew Sergent Ent had returned from his squad car. Neither officer appeared to ever make any physical contact with Defendant. While it is true that Defendant was not advised of his constitutional rights prior to giving his consent, those facts do not outweigh the other factors. Therefore, the Court concludes Defendant voluntarily consented to a search of the vehicle.

Even if Defendant did not voluntarily consent to a search, the Court finds that Trooper Heaton reasonably believed he did based on the circumstances. Trooper Heaton testified he believed he had obtained Defendant's consent. In *Illinois v. Rodriguez*, 497 U.S. 177 (1990), the Supreme Court determined that a warrantless search was valid when officers reasonably but erroneously believed that a third party that consented to the search had authority to do so. *Id.* at 188-89. Applying that principle to this case, the Court concludes Trooper Heaton reasonably relied on what believed was Defendant's consent.

## III.    CONCLUSION

Accordingly, Defendant's Amended Motion to Suppress Evidence is DENIED. (Doc. 33).

ENTER: August 7, 2026

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE